UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 2:11-cr-48
    HON. ROBERT HOLMES BELL

JAY EMERSON HUNTER,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant moves to suppress statements that he made on July 1, 2011, during an interview that occurred at the Bay Mills Tribal Police Department. Defendant was indicted with sex with a person less than 12 years old, 18 U.S.C. § 2241(c); 18 U.S.C. § 2246(2)(C) and abusive sexual contact without permission with a child under 12, 18 U.S.C. § 2233(a)(5); 18 U.S.C. § 2241(c), 18 U.S.C. § 2246(3) and 18 U.S.C. § 1153. An evidentiary hearing was held on January 17, 2011.

Testifying at the hearing was FBI Special Agent Richard Grout. Defendant presented no witnesses. On July 1, 2011, FBI Special Agent Richard Grout and Bay Mills Tribal Police Department Lieutenant Ronald Rindy brought defendant to the Bay Mills Tribal Police Department for questioning. Special Agent Grout and Lieutenant Rindy went to defendant's residence and knocked on the door at approximately 9:00 a.m. that morning. Defendant answered the door and agreed to accompany the officers to the police station for questioning. Defendant was given the opportunity to change his clothes. Defendant voluntarily agreed to the interview. Defendant was driven to the police station in a marked police vehicle. Defendant was not handcuffed and was not

placed under arrest. Defendant was taken into an interview room and was offered coffee and the ability to use the rest room. Defendant did not want anything to drink. Defendant agreed to speak. Defendant had thought that they were going to discuss rumors that he had hit a kid. In fact, the discussion was about defendant's activities while babysitting a child. After initially denying that he had sexual contact with the child, defendant admitted to touching the child in a sexual manner and described three separate incidents. Defendant stated that he felt bad about the incidents and although he babysat the child one more time he did not have sexual contact with her the last time because it was not right. Defendant agreed to mark a diagram of the outline of a hand to indicate how far his finger penetrated the child. Defendant signed the diagram. The interview lasted about 90 minutes. Defendant was taken back home at the conclusion of the interview.

Defendant claims that his statements were involuntary and the product of coercion, or alternatively the product of an illegal seizure. The government argues that defendant was not under arrest, was not in custody, and made his confession voluntarily. Alternatively, defendant argues that even if his statements were considered voluntary, they should be suppressed as the product of an illegal seizure because his detention was actually an arrest made without probable cause.

The government submits that defendant was interviewed as part of an investigation and was not in custody at the time of the investigation.

> The Fifth Amendment provides that a defendant cannot be "compelled in any criminal case to be a witness against himself." Consistent with this right against self incrimination, the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), ruled that suspects cannot be subjected to a custodial interrogation until they have been advised of their rights. In order to encourage compliance with this rule, incriminating statements elicited from suspects in custody cannot be

>    admitted at trial unless the suspect was first advised of his or her Miranda rights. *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994).

*United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998).

It is the compulsive aspect of custodial interrogation which led the Supreme Court to develop the Miranda doctrine. Thus, law enforcement's obligation to administer Miranda warnings is triggered only where there has been such a restriction on a person's freedom as to render him "in custody." *Miranda*, 384 U.S. at 444. In determining whether an individual is in custody, a court must examine the totality of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. *Id.* at 1528-1529. Under this approach, courts look at factors which include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily acquiesced to the request for an interview. *Salvo* at 950.

There are two Supreme Court cases in which the facts closely resemble those presently before the Court. In *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517 (1983), the suspect voluntarily accompanied police to the station for questioning and freely departed at the end of the interview, after being told he was not under arrest but that his statement would be evaluated by the district attorney concerning that possibility. Similarly, in *Oregon v. Mathiason*, 429 U.S. 492, 97 S. Ct. 711 (1977), the defendant agreed to meet the investigating officer at the station house for

an interview. The defendant was told he was a burglary suspect but that he was not under arrest. He was told that his truthfulness would be evaluated by the district attorney or judge. He was taken into a closed office, where he was questioned concerning the burglary. The defendant was falsely told that his fingerprints were found at the scene. After a long pause, the defendant admitted to the crime. The defendant was then given Miranda warnings, but was not arrested. He left the station after being informed that the case would be referred to the district attorney for a decision whether charges would be pursued.

In both of these cases, the Supreme Court found that Miranda warnings were unnecessary because questioning did not take place in a context in which the defendant's freedom to depart was restricted in a meaningful way. The Court acknowledged that all police interviews of those suspected of crime have coercive aspects. However, police are not required to administer Miranda warnings to every suspect they interview. It is only under the additional pressures of a custodial environment that Miranda is triggered.

The government argues that defendant was never taken into custody and that the interview was simply part of an investigation that defendant participated in voluntarily. The government bears the burden of proving by preponderance of the evidence that defendant's waiver was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972); *North Carolina v. Butler*, 441 U.S. 369 (1979). In determining whether or not the waiver was voluntary, the Court is required to look at the totality of the circumstances to determine whether or not the police officers engaged in coercive conduct during the interrogation and whether or not the coercive conduct resulted in the incriminating statements. *See Colorado v. Connelly*, 479 U.S. 157 (1986). Factors which should be considered are the location of the questioning, whether *Miranda* warnings were given, the number

of interrogators, the length of questioning, whether or not the defendant was denied food, water or toilet facilities, and whether the police used threats, promises, lies or tricks. In *Connelly*, the court rejected the argument that a defendant's mental state without police coercion was enough to suppress a confession as involuntary. In that case, the defendant suffered from chronic schizophrenia. The voice of God told defendant to confess to the murder. Defendant contacted police and confessed to the murder. The Supreme Court rejected the contention that defendant's mental state alone rendered the confession involuntary. "But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id*. at 164.

An explicit statement of waiver is not invariably necessary to support a finding that the defendant waived his right to remain silent. *See North Carolina v. Butler*, 441 U.S. 369, 375-376 (1979). Waiver cannot be established merely by showing that the accused participated in the interrogation by answering questions posed to him. *Edwards v. Arizona*, 451 U.S. 477, 484 (1981). However, waiver can be inferred from the words of the accused and his course of conduct where it is clear that the defendant understood his rights. *Butler*, 441 U.S. at 373. This court must presume that the defendant did not waive his *Miranda* rights. *Butler*, 441 U.S. at 373. The burden is on the Government to demonstrate that the defendant knowingly and intelligently waived his right to remain silent and his right to counsel. *Id.*

The uncontradicted evidence before the court, is that defendant voluntarily agreed to accompany Special Agent Grout and Lieutenant Rindy to the Bay Mills Tribal Police Department for an interview. Defendant was 21 years old at the time of the interview and had multiple prior contacts with law enforcement. There was no testimony presented that could allow the court to

presume that defendant was under any mental duress or any impaired mental state at the time of the interview. Defendant was free to leave at all times and was offered a drink and use of the rest room during the interview. There is no evidence of coercive conduct or undue pressure during the interview process. Defendant was never handcuffed or placed under arrest on the day of interview. Defendant's movement was not restricted. Defendant never asked for a break from questioning. Defendant voluntarily made his statements and voluntarily marked the drawing which he signed. Under these circumstances, defendant was not in custody and his statements should not be suppressed.

Accordingly, it is recommended that defendant's motion to suppress (Docket #23) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 24, 2012